O

# United States District Court
# Central District of California

| | |
|---|---|
| CITY OF LOS ANGELES,<br><br>            Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE & CO.;<br>JPMORGAN CHASE BANK, N.A.; and<br>CHASE MANHATTAN BANK USA,<br>N.A.,<br><br>           Defendants. | Case No. 2:14-cv-04168-ODW(RZx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND [28]** |

## I.  INTRODUCTION

This action is the fourth installment of the discriminatory lending suits brought by Plaintiff City of Los Angeles ("the City") against large lending institutions. Defendants in this action are JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; and Chase Manhattan Bank USA, N.A. (collectively, "Chase"). The City is seeking to recover damages under the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–19, for lost property-tax revenue and increased municipal services stemming from foreclosures that are allegedly the result of discriminatory lending practices.

But unlike the previous installments—where motions to dismiss have been denied—Chase raises a new ground for dismissal in its Motion to Dismiss, unique to

Chase, which the Court finds warrants a different result. For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss **WITH LEAVE TO AMEND**.[1] (ECF No. 28.)

## II. FACTUAL BACKGROUND

The City filed the Complaint on May 30, 2014, asserting two claims for (1) violating the FHA, and (2) common-law restitution. (ECF No. 1.) According to the City, Chase has engaged in discriminatory lending practices that have resulted in a disparate number of foreclosures in minority areas of Los Angeles. (*See* Compl. ¶ 2.) The City is seeking to recover lost property-tax revenue as well as expenses incurred for increased municipal services as a result of these foreclosures. (*See id.* ¶ 155.)

There are three related cases in the Central District of California where the City has brought identical claims against other large lending institutions. Motions to dismiss have already been denied in each of the related cases. (*City of L.A. v. Wells Fargo*, No. 2:13-cv-9007-ODW(RZx), ECF No. 37; *City of L.A. v. Citigroup Inc.*, No. 2:13-cv-9009-ODW(RZx), ECF No. 47; *City of L.A. v. Bank of Am.Corp.,* No. 2:13-cv-9046-PA(AGRx), ECF No. 50.)

As in the related cases, the City alleges here that Chase has engaged in "redlining" and "reverse redlining." (Compl. ¶ 4.) Redlining is the practice of denying credit to particular neighborhoods based on race. (*Id.* ¶ 4 n.2.) Reverse redlining is the practice of flooding a minority neighborhood with exploitative loan products. (*Id.* ¶ 4 n.3.) The lengthy Complaint also includes a regression analysis of loans allegedly issued by Chase in Los Angeles, and alleges numerous statistics based on this analysis. (*See, e.g.*, *id.* ¶¶ 101–06.) In addition, the Complaint includes confidential witness statements from former employees who describe how minorities were allegedly steered toward predatory loans. (*Id.* ¶¶ 61–93.)

///

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

But unique to this case is the relationship between Chase and Washington Mutual Bank ("WaMu"). The City seeks to hold Chase liable, in part, based on the discriminatory loans issued by WaMu. (*Id.* ¶ 2 n.1, ¶ 29.) WaMu failed in 2008 when the Office of Thrift Supervision seized WaMu's assets and operations, placing them into receivership with the Federal Deposit Insurance Corporation ("FDIC"). (*Id.* ¶ 26); *see also Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1210 (9th Cir. 2012). The FDIC then transferred certain WaMu assets and liabilities to Chase under a Purchase and Assumption Agreement. (Compl. ¶¶ 26–29); *see also Benson*, 673 F.3d at 1210.[2] In the Complaint, the City alleges that "[t]he liabilities assumed by JPMorgan & Co. include the claims alleged by Los Angeles herein." (Compl. ¶ 26.) Throughout the remainder of the Complaint, the City does not distinguish between loans originating from WaMu and loans originating from Chase. (*See id.* ¶ 2 n.1.)

On June 25, 2014, Chase filed the present Motion to Dismiss. (ECF No. 28.) Chase raises the same grounds for dismissal that were addressed in the three related cases. But Chase also raises a new issue based on WaMu's failure, the FDIC's receivership, and Chase's subsequent purchase of WaMu's assets. The City timely opposed the Motion (ECF No. 32), and Chase filed a timely Reply (ECF No. 35.) The Court took the matter under submission on July 28, 2014.

### III.   LEGAL STANDARD

**A.   Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction. Rule 12(b)(1) jurisdictional attacks can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d

---

[2] The entire Purchase and Assumption Agreement is available on the FDIC's website at www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf.

1066, 1073 (9th Cir. 2009).  Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply in equal force to facial challenges of subject-matter jurisdiction.  *See Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).  Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

On the other hand, with a factual Rule 12(b)(1) attack, a court may look beyond the complaint.  *See White*, 227 F.3d at 1242–43 (affirming judicial notice of matters of public record in Rule 12(b)(1) factual attack); *see also Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983) (holding that a district court is free to hear evidence regarding jurisdiction).  In a factual attack, a court need not presume the truthfulness of the allegations in the complaint.  *White*, 227 F.3d at 1242.  But courts should refrain from resolving factual issues where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on resolution of the factual issues going to the merits." *Augustine*, 704 F.2d at 1077 (holding that resolution of factual issues going to the merits requires a court to employ the standard applicable to a motion for summary judgment).

**B.     Rule 12(b)(6)**

Under Rule 12(b)(6), a court may dismiss a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level" and a claim for relief must be "plausible on its face." *Twombly*, 550 U.S. at 555, 570.

/ / /

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Moreover, a court may take judicial notice of matters of public record without converting the motion into one for summary judgment. *E.g.*, *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

Chase moves to dismiss the Complaint on several familiar grounds. Chase contends that the City's claims are barred by the statute of limitations and that the City lacks Article III and statutory standing. In addition, Chase argues that the City has failed to state a claim for either disparate treatment or disparate impact under the FHA, and that the City's restitution claim fails because no benefit has been conferred. But unlike the motions to dismiss in the related cases, Chase brings a new basis for dismissal, unique to this action: the jurisdictional bar in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821. For the reasons discussed below, the Court finds that Chase's FIRREA argument has merit, and it need not reach the remainder of Chase's arguments in the Motion.

### A. FIRREA'S Jurisdictional Bar

Chase argues that, under FIRREA, the Court lacks subject-matter jurisdiction to adjudicate the City's claims that relate to WaMu's origination of discriminatory loans before the bank's failure in 2008. (Mot. 3:25–6:2.) Moreover, since the City makes no distinction between WaMu and Chase in the Complaint, the entire Complaint must be dismissed. (*Id.* at 8:15–12:13.) But the City contends that Chase interprets FIRREA's jurisdictional bar too broadly and that Chase assumed liability for the City's claims in the Purchase and Assumption Agreement. (Opp'n 3:18–11:11.)

Congress's purpose in enacting FIRREA in the late 1980s was "to enable the federal government to respond swiftly and effectively to the declining financial condition of the nation's banks and savings institutions." *Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993). The statute grants "the FDIC authority to act as receiver or conservator of a failed institution for the protection of depositors and creditors." *Benson*, 673 F.3d at 1211 (internal quotations and citations omitted). The FDIC's authority includes detailed procedures for considering claims against the receivership "to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks." *McCarthy v. FDIC*, 348 F.3d 1073, 1079 (9th Cir. 2003) (internal quotations and citations omitted); *see also* 12 U.S.C. § 1821(d)(3)–(10).

In addition, FIRREA strips courts of jurisdiction over claims that have not been exhausted through the FDIC's claims process:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D).

According to Chase, § 1821(d)(13)(D)(ii) bars the City's claims here to the extent that they include the allegedly discriminatory lending practices of WaMu. The Court agrees. The Ninth Circuit has interpreted FIRREA's jurisdictional bar broadly, holding that "§ 1821(d) extends to all claims and actions against, and actions seeking determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver . . . ." *McCarthy*, 348 F.3d at 1079; *see also Rundgren v. Wash. Mut. Bank, FA*, No. 12-15368, --- F.3d ---, 2014 WL 3720238, at *3 (9th Cir. July 29, 2014) (holding that § 1821(d)(13)(D) "is drafted broadly" to "preclude federal courts from exercising jurisdiction over non-exhausted claims by any claimant").

Moreover, FIRREA does not distinguish claims based on the identity of the defendant, but rather on the factual bases of the claims. *Benson*, 673 F.3d at 1212. Thus, courts are divested of jurisdiction over claims against a purchasing bank—like Chase—when the claims are "based on the conduct of a failed institution" such that the claims are "*functionally*, albeit not *formally* against a failed bank." *Id.* at 1214–15 (internal quotations omitted).

Here, the City explicitly seeks to hold Chase liable for WaMu's lending practices in the Complaint. (*See* Compl. ¶ 2 n.1, ¶ 29.) The City's regression analysis includes loans that were originated between 2004 and 2008, when WaMu was still in operation. (*See id.* ¶¶ 101–02.) In addition, some of the confidential witness statements in the Complaint are from former WaMu employees (*id.* ¶ 61), and Chase has supplied judicially noticeable evidence that a number of the "sample foreclosure properties" listed in the Complaint were issued by WaMu. (*Id.* ¶ 145; ECF No. 30

///
///

7

("RJN"), Exs. 1–8.)³  The Court finds that the City has brought claims related to WaMu's acts or omissions.  Since the claims are based, at least in part, on a failed institution's conduct, FIRREA's jurisdictional bar is implicated.  *See Benson*, 673 F.3d at 1214–15.

In its Opposition, the City attempts to steer the Court away from the Ninth Circuit's holding in *Benson*, pointing to out-of-circuit case law and subsequent unpublished decisions to maintain its claims against Chase that relate to WaMu's lending activities.  (Opp'n 4:3–7:21.)  But the Court finds no reason to stray from the unambiguous holding in *Benson*—despite its breadth—particularly in light of the Ninth Circuit's most recent FIRREA opinion.  *See Rundgren*, 2014 WL 3720238, at *7 ("A claimant cannot circumvent the exhaustion requirement by suing the purchasing bank based on the conduct of the failed institution.").

The City also argues that the holding in *Benson* omits a necessary step in the analysis here—whether Chase assumed liability for the claims at issue in the Purchase and Assumption Agreement.  (Opp'n 8:3–11:11.)  The City contends that Chase assumed liability for WaMu's conduct alleged in the Complaint, so the claims are not "susceptible of resolution" under FIRREA's administrative procedure.  (*Id.*; Not. of Supp. Auth. at 1.)  However, the Court disagrees.

First, the Court is not convinced that interpretation of the Purchase and Assumption Agreement is necessary to determine whether the claims are "susceptible of resolution" through the administrative claims procedure.  *See McCarthy*, 348 F.3d at 1081 ("FIRREA's exhaustion requirement applies to *any* claim or action respecting the assets of a failed institution for which the FDIC is receiver.").  Neither *Benson* nor *Rundgren* rely on interpretations of the Purchase and Assumption Agreement in

---

[3] The documents in Chase's Request for Judicial Notice are deeds of trust for eight of the "sample foreclosure properties" listed in the Complaint.  The deeds of trust have all been recorded in the Los Angeles County Recorder's Office and list WaMu or a WaMu subsidiary as the lender.  The Court finds that they are not subject to reasonable dispute as they are matter of public record and **GRANTS** the Request for Judicial Notice.  (ECF No. 30); Fed. R. Evid. 201(b).

holding that FIRREA barred the plaintiffs' claims in district court.[4]  In fact, the court in *Rundgren* explicitly held that § 1821(d)(13)(D) "precludes courts from exercising jurisdiction over 'any claim relating to any act or omission' of a failed bank, *without respect to the identity of the claimant*."  2014 WL 3720238, at *3 (emphasis added).

But the Court acknowledges that both *Benson* and *Rundgren* involved borrowers, which distinguishes them from the City's claims here.  (*See* Compl. ¶ 29 ("Los Angeles is not a borrower, it is not pursuing a derivative claim on behalf of any borrower, and is not seeking damages on behalf of any borrower.").)  However, even under the Purchase and Assumption Agreement, the Court finds that Chase did not assume liability for the City's claims relating to WaMu.[5]  Thus, dismissal of the WaMu allegations would still be proper.

Section 2.1 of the Purchase and Assumption Agreement titled "Liabilities Assumed by Assuming Bank" provides:

> Subject to Sections 2.5 and 4.8, the Assuming Bank [Chase] expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform, and discharge, all of the liabilities of the Failed Bank [WaMu] which are reflected on the Books and Records of the Failed Bank as of Bank Closing, including the Assumed Deposits and all liabilities associated with any and all employee benefit plans, except as listed on the attached Schedule 2.1, and as otherwise provided in this Agreement (such liabilities referred to as "Liabilities Assumed").  Nothwithstanding Section 4.8, the Assuming Bank specifically assumes all mortgage servicing rights and obligations of the Failed Bank.

---

[4] The court in *Rundgren* did include Section 2.5 of the Purchase and Assumption Agreement in a footnote in its factual background.  2014 WL 3720238, at *1.  But the court never addressed the Purchase and Assumption Agreement in its later analysis.

[5] The City specifically incorporates relevant sections of the Purchase and Assumption Agreement in the Complaint.  (Compl. ¶¶ 27–28.)  The Court may take judicial notice of the entire document since the Complaint necessarily relies on it, its authenticity is not contested, and it is part of the public record as the FDIC is a party to the Agreement.  *Lee v. City of L.A.*, 250 F.3d at 688–89.

1 Section 2.5 of the Purchase and Assumption Agreement relates specifically to loans
2 issued by WaMu and reads as follows:

> Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank [WaMu] prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank [Chase].

According to the City, these two sections read together demonstrate that Chase assumed liability for the City's claims relating to WaMu's lending activities. The City contends that Section 2.5 only applies to *borrower* claims, and the City is not a borrower. (Opp'n 10:3–11:11; Compl. ¶ 29.) The City then argues that Chase has only mounted a facial attack under Rule 12(b)(1), so the City's allegations that Chase assumed liability under the Purchase and Assumption Agreement per Section 2.1 must be accepted as true. (Opp'n 9:6–10:2; Compl. ¶ 26 ("The liabilities assumed by JPMorgan & Co. include the claims alleged by Los Angeles herein.").) Thus, according to the City, the claims are not "susceptible of resolution" through the FDIC's claims procedure and are properly brought against Chase.

However, the Court interprets the plain language of the Purchase and Assumption Agreement differently. As Chase points out, Section 2.1 limits the liabilities assumed in terms of where and when they must be listed—on the Books and

1  Records of WaMU as of September 25, 2008, when WaMU's assets were seized.
2  (Reply 6:9–16.)  The City cannot allege that the liabilities at issue here were on
3  WaMu's Books and Records in 2008, because the City did not file this lawsuit until
4  more than five years after WaMu's failure.  Moreover, little weight should be given to
5  the last sentence of Section 2.1 regarding the assumption of mortgage servicing rights
6  and obligations.  This sentence does not use the word "liabilities," but rather states
7  that Chase assumes the "rights" and "obligations" of mortgage servicing.  The Court
8  finds that this sentence merely requires Chase to continue performance under
9  mortgage contracts issued by WaMu.  "Rights" and "obligations" are not synonyms
10 for "liability" in the Purchase and Assumption Agreement.  Furthermore, as discussed
11 below, Chase expressly disclaims any liability associated with loans issued by WaMu.

12       With respect to Section 2.5, the City focuses on the word "borrower."  But the
13 Court finds that Section 2.5 is not limited to borrower claims.[6]  The section's plain
14 language disclaims liability under four circumstances, all separated by the word "or":
15 (1) borrower claims for monetary relief; (2) borrower claims for any other form of
16 relief; (3) claims associated with loans made by third parties in connection with a
17 WaMu loan; and (4) "any liability associated with borrower claims . . . otherwise
18 arising in connection with [WaMu's] lending or loan activities . . . ."  The last
19 circumstance is a catch-all provision which anticipates non-borrower claims such as
20 the claims brought by the City in this action.  This is the only interpretation that makes
21 sense without producing absurd results.  Under the City's interpretation of Section 2.5,
22 Chase would be free of all claims for discriminatory lending brought by borrowers,
23 but could still be liable to the City for the same discriminatory lending practices.

24       The policy behind FIRREA's provisions also support the Court's interpretation
25 of the Purchase and Assumption Agreement.  "[FIRREA's] design facilitates the sale

---

[6] The Court notes that Section 2.5's heading reads "Borrower Claims."  But Section 13.2 of the Purchase and Assumption Agreement states that headings "are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provision hereof."  Thus, the Court declines to narrow Section 2.5's scope to only borrower claims based on the section's heading.

of a failed institution's assets (and thus helps to minimize the government's financial exposure) by allowing the [receiver] to absorb liabilities itself and guarantee potential purchasers that the assets they buy are not encumbered by additional financial obligations." *Payne v. Sec. Sav. & Loan Ass'n F.A.*, 924 F.2d 109, 111 (7th Cir. 1991) (holding that FIRREA directs that the receiver "is the proper successor to the liability" absent an express transfer and assumption of liability); *see also Williams v. FDIC*, No. CIV 2:07-2418 WBS GGH, 2009 WL 5199237, at *5 (E.D. Cal. 2009) ("[A]n assuming bank would rarely be inclined to enter a P & A agreement with the FDIC knowing that it could be taking on unidentified liabilities of undefined dimensions that could arise at some uncertain date in the future.").

Finally, the Court turns to the City's contention that Chase has mounted only a facial attack under Rule 12(b)(1), requiring this Court to accept as true the City's allegation that Chase assumed liability for the claims at issue. The City's argument fails for two reasons. First, the Court is not required to accept conclusory allegations as true. *Sprewell*, 266 F.3d at 988. Second, the Court is merely interpreting the plain language of the Purchase and Assumption Agreement that the City explicitly incorporates into the Complaint. (*See* Compl. ¶¶ 27–28.) The Court's analysis here does not extend beyond the pleadings. Therefore, whether Chase is facially or factually attacking jurisdiction, or both, is irrelevant because the Court's limits its analysis to a facial attack on the Complaint.

For the reasons discussed above, the Court finds that FIRREA bars this Court from hearing the City's claims as they relate to WaMu's discriminatory lending practices. The City was required to exhaust its claims relating to WaMu with FDIC, which the City has not alleged. Accordingly, the City's allegations against Chase relating to WaMu's conduct are **DISMISSED**.

B.     **Leave to Amend**

The Court's analysis up to this point has focused on the City's allegations with respect to the conduct of WaMu. But the Complaint's allegations are not limited to

WaMu's discriminatory lending. The Complaint also includes allegations related to Chase's own lending practices, during and after the purchase of WaMu's assets. Therefore, the Court must determine whether the City has adequately stated a claim against Chase after excising all of the allegations related to WaMu's conduct. *See Benson*, 673 F.3d at 1216 (holding that when a plaintiff includes allegations of both a failed bank and a purchasing bank, courts "frequently dismiss those portions of a claim that are barred while permitting the remaining portion of a claim to go forward.")

The problem here is that the Court cannot excise the allegations related to WaMu from the remainder of the allegations. The City's claims are based on a detailed regression analysis that lumps loans issued by both Chase and WaMu together. (*See* Compl. ¶¶ 101–06.) Consequently, the statistics resulting from that analysis take into account WaMu conduct over which this Court lacks jurisdiction. Moreover, the City also relies on five confidential witness statements, but three of those confidential witnesses worked for WaMu, and two of those three worked for both WaMu and Chase. (Compl. ¶¶ 61–93.) The City also includes "sample foreclosure properties" in the Complaint—eight of which involved loans issued by WaMu. (Compl. ¶ 145; RJN Exs. 1–8.)

The aggregation of the regression analysis, the confidential witness statements, and even the sample foreclosure properties is integral to this Court's analysis of the remainder of Chase's grounds for dismissal. *See City of L.A. v. Citigroup, Inc.*, No. 2:13-cv-9009-ODW(RZx), 2014 WL 2571558 (C.D. Cal. June 9, 2014); *City of L.A. v. Wells Fargo & Co.*, No. 2:13-cv-9007-ODW(RZx), 2014 WL 2206368 (C.D. Cal. May 28, 2014). But these key aspects of the Complaint are tainted with allegations of conduct related to WaMu's lending activities. Accordingly, the Court **DISMISSES** the Complaint in its entirety, but **GRANTS LEAVE TO AMEND** so that the City may attempt to excise any allegations related to WaMu's lending practices.

/ / /

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss **WITH LEAVE TO AMEND**. (ECF No. 28.) The City shall file an amended complaint **no later than 21 days** from the date of this Order.

**IT IS SO ORDERED.**

August 5, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**